**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**TEXTRON FINANCIAL CORPORATION**

v.

**C.A. No.: 08 – 020ML**

**VISTA INTERNANTIONAL DEVELOPMENT, A CALIFORNIA GENERAL PARTNERSHIP, THE JACKSON FOUR, A CALIFORNIA GENERAL PARTNERSHIP, PRINCE BARDO BRANTLEY; SANDRA BRANTLEY, FRANK RAMOGIDA; AND EDWARD POWELL**

## ANSWER OF VISTA INTERNATIONAL DEVELOPMENT AND PRINCE BARDO BRANTLEYTO PLAINTIFF'S COMPLAINT

Defendants, Vista International Development ("Vista") and Prince Bardo Brantley ("P. Brantley") hereby answer Plaintiff's Complaint as follows:

1. Admitted

2. Admitted.

3. Admitted.

4. The allegations of paragraph 4 are not directed to the Defendants, Vista or P. Brantley. Accordingly, Vista and P. Brantley do not interpose an answer to paragraph 4 of Plaintiff's Complaint.

5. P. Brantley admits that he was a partner of Jackson 4.

6. The allegations of paragraph 6 are admitted by Defendant P. Brantley.

7. The allegations of paragraph 7 are not directed to the Defendants, Vista or P. Brantley. Accordingly, Vista and P. Brantley do not interpose an answer to paragraph 7 of Plaintiff's Complaint.

8. The allegations of paragraph 8 are not directly to the Defendants, Vista or P. Brantley. Accordingly, Vista and P. Brantley do not interpose an answer to paragraph 8 of Plaintiff's Complaint.

9. The allegations of paragraph 9 are not directed to the Defendants, Vista or P. Brantley. Accordingly, Vista and P. Brantley do not interpose an answer paragraph 9 of Plaintiff's Complaint.

10. Defendants Vista and P. Brantley admit there is diversity of citizenship between the parties and that the amount in controversy exceeds $75,000.

11. The allegations of paragraph 11 are admitted by Defendant Vista.

12. Admitted.

13. Admitted.

14. Admitted.

15. The allegations of paragraph 15 are admitted by Defendants Vista and P. Brantley.

16. Admitted.

17. Admitted.

18. Admitted.

19. Admitted.

20. Admitted.

21. Admitted.

22. Admitted.

23. Admitted.

24. Admitted.

25. Admitted

26. Admitted.

27. The allegations of paragraph 27 are not directed to Defendants Vista or P. Brantley. Accordingly, Defendants Vista and P. Brantley do not interpose an answer to paragraph 27 of Plaintiff's Complaint.

28. Admitted.

29. Admitted.

30. Admitted.

31. The allegations of paragraph 31, 32, 33, 34, 35, 36 and 37 are not directed to Defendants Vista and P. Brantley. Accordingly, Defendants Vista and P. Brantley do not interpose an answer to paragraphs 31, 32, 33, 34, 35, 36 and 37 of Plaintiff's Complaint.

Denied.

AFFIRMATIVE DEFENSES

1. Plaintiff's Complaint fails to join several indispensable parties, namely, All American Homes, LLC and Coachmen Industries.

2. Plaintiff's claims are barred by Plaintiff's lack of good faith and fair dealing in the circumstances of this case.

Defendants, Vista International Development
And Prince Bardo Brantley
By their Attorney,

Casby Harrison, III, R.I. Bar No. 3054
HARRISON LAW ASSOCIATES
807 Broad Street, Suite 100
Providence, RI 02907
Tel: (401) 467-20
Fax: (401) 467-2001
casby@casbyharrison.com

COUNTERCLAIM OF VISTA INTERNATIONAL
DEVELOPMENT AND PRINCE BARDO BRANTLEY

1. Defendants had plans to build 18 residential single family town homes in Jackson, Tennessee using prefabricated modular panels built by All American Homes, LLC. ("All American")

2. Defendants obtained their construction loan financing from Textron to pay for the modular boxes built by All American.

3. Defendants borrowed from Textron solely because All American strongly suggested that Defendants use Textron for their construction financing and because All American gave Defendants financing incentives to use Textron.

4. All American prepared plans and specifications for the modular panels it would deliver to Defendants, and said plans and specifications were stamped and approved by State and local building officials in Jackson, Tennessee, as well as by All American's own engineer, T. R. Arnold & Associates.

5. The plans and specifications required two separate 1 hour rated fire walls with an air space between them dividing the units.

6. Defendants built the foundations for the housing units in question.

7. All American delivered the modular units and set them down on the foundations using cranes. There were five boxes per building.

8. All American Homes proceeded to connect the modular units to the foundations. Defendants performed the finish work to complete the homes.

9. Before all the homes could be completed, local building officials determined that All American had not built the modular units in accordance with the specifications approved by the State engineer and City of Jackson building officials, which specifications had also been stamped and approved by All American's own engineer.

10. The units constructed by All American did not have the two 1 hour walls with an air space between them dividing the units. Consequently the housing units did not meet the fire code for single family occupancy.

11. The failure to comply with the fire code for single family occupancy was a direct result of the negligence and breach of contract of All American.

12. The cost to cure the non compliance with the fire code to allow for single family occupancy was prohibitive and not economically justified, because it would require tearing down the walls that did not meet the fire code and replacing them with walls that did meet the fire code. Additionally, stairs, doors, fireplaces, and interior walls would also have to be demolished and rebuilt.

13. The failure to meet the fire code for single family occupancy presented the Defendants with the risk of not being able to sell the housing units in a timely manner to be able to repay the construction loan to Textron.

14. Defendants brought the non compliance with the fire code problem to the attention of All American and Textron at the same time, and Defendants told them that what All American had built could not be used for its intended purpose, namely, single family housing.

15. Defendants proposed to apply to have the units rezoned from single family to four plex apartment units. Defendants would rent the units, and upon developing an income stream, refinance the project and repay Textron.

16. The moment the project became rezoned from single family units to apartment units the Defendants' profits from the project would be reduced by approximately $400,000, because apartment units have less value than single family units.

17. Textron forbade Defendants from attempting to rezone the project, thereby causing an untenable standstill in which Defendants could not achieve occupancy of the units for single family occupancy or otherwise.

18. Textron's position of threatening to file suit, to foreclose and to repossess the property rather than permit Defendants to rezone and refinance to repay Textron constituted bad faith on the part of Textron.

19. Every conference call Defendants ever had with Textron to attempt to resolve the problem of All American's fire code non compliance has involved both Textron and All American on the telephone with Defendants at the same time. There is absolute linkage between Textron and All American.

20. Textron and All American have had a longstanding mutually beneficial business relationship they wanted to protect and preserve to the detriment of Defendants.

21. Similarly, Textron has had a long standing and extremely financially lucrative business relationship with All American's parent company, Coachmen Industries Textron and Coachmen wanted to protect and preserve their relationship with each other to the detriment of Defendants.

22. High ranking officers of Coachmen Industries also participated in the telephone conference calls wherein Defendants attempted to propose workable solutions to the fact that the housing units in question cannot be sold as single family units due to no fault of the Defendants.

23. Textron's counter intuitive position of blocking any opportunity for Defendants to market the housing units in question arises out of a collusive agreement between Textron, All American and Coachmen Industries for Textron to wrongfully acquire Defendant's property, by using lawful means to accomplish an unlawful purpose.

24. Textron is further motivated to financially maim Defendants so that Defendants may not have the financial wherewithal to prosecute their Third Party Complaint against All American and Coachmen Industries.

25. Defendants state that if they are found liable to the Plaintiff, the liability will have been brought about by the negligence of All American and Coachmen Industries and the collusive relationship they both have with Plaintiff. Accordingly, Defendants are entitled to indemnity and or contribution from All American and Coachmen Industries, as well as a setoff against the claims of Plaintiff.

Wherefore, Defendants Vista International Development and Prince Bardo Brantley demand indemnity and or contribution from Third Party Defendants All American Homes, LLC., and Coachmen Industries, for all sums that may be rendered in favor of Plaintiff against Defendants, along with a setoff against Textron Financial Corporation in an amount to be determined at the trial of this matter.

Defendants demand trial by jury.

Counterclaim Plaintiffs, Vista International
Development and Prince Bardo Brantley,
By their attorney,

Casby Harrison, III Bar No. 3054
Harrison Law Associates
807 Broad Street
Providence, RI 02907
401-467-2000 office
401-467-2001 fax
casby@casbyharrison.com

I hereby certify that I sent a copy of Defendants' Answer and Counterclaim by regular mail to Plaintiff's counsel, John P. Gyorgy, Noel & Gyorgy, LLP., 50 South Main Street, Providence, RI 02903 on Wednesday March 12, 2008.

Casby Harrison, III