UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

TEXTRON FINANCIAL CORPORATION

v. CA NO. 2008-020 ML

VISTA INTERNATIONAL DEVELOPMENT, A CALIFORNIA GENERAL PARTNERSHIP; THE JACKSON FOUR, A CALIFORNIA GENERAL PARTNERSHIP; PRINCE BARDO BRANTLEY; SANDRA BRANTLEY; FRANK RAMOGIDA; EDWARD POWELL

MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR SANCTIONS PURSUANT TO RULE 11(c)(1)

## Introduction

This case was brought by Textron Financial Corporation ("TFC")to recover the balance due on a loan made to Vista International Development ("Vista") to finance a real estate development in Jackson, Tennessee. Approximately $1.5 million remains due on the loan. The other defendants in the case are liable for Vista's indebtedness as guarantors and/or as general partners of Vista. The only defendants who have answered the Complaint are Vista and Prince Brantley, Vista's principal. The Answer they filed included a counterclaim against TFC. That counterclaim and the defenses asserted in their Answer prompt this Motion.

Shortly after this case was filed in January of this year, TFC filed three detainer actions in Tennessee state court, seeking possession of the three parcels of real estate in Jackson, Tennessee that were the primary security for the Vista loan. In early March, before Vista and Brantley filed their Answer in this case, the Tennessee action was resolved by entry of an "Agreed Possessory Order" submitted and signed by Tennessee counsel for both TFC and Vista. That Order was approved and entered by the Tennessee Court on March 10, 2008. The Order granted TFC possession of the real estate, but only after the expiration of a sixty-day period during which Vista could refinance the TFC loan. Vista was unsuccessful in that effort. TFC has not yet taken possession of the real estate, or foreclosed the deeds of trust given by Vista as part of the original loan. Vista's indebtedness has not been reduced.

## Argument

The central premise of this Motion is that the Agreed Possessory Order entered in the Tennessee litigation precludes the defenses and counterclaim asserted by Vista in the Answer filed in this case. The factual basis for the relief granted by the Tennessee Court was stated in the Agreed Possessory Order as follows:

> **Stipulation and Finding**
>
> VISTA is in default under the Deeds of Trust and the promissory notes referenced therein, which have a past due balance, exclusive of attorney fees and expenses, of $1,473,567.27 as of March 10, 2008 (the "Past Due Balance," with it and all other amounts due and coming due referred to as the "Indebtedness"). The Past Due Balance is comprised of $1,417,448.79 in principal owed, $49,474.70 in interest owed, $5,338.83 in late fees owed, and $1,304.95 in other fees owed, none of which are subject to offset, reduction, defense or counterclaim. This Court finds that the compromise memorialized herein is well-taken and accepts the same.

A complete copy of the Agreed Possessory Order is attached as Exhibit A.

The Answer filed in this case violates Rule 11(b) since it asserts defenses and a counterclaim that Vista had admitted in writing only days before did not exist. Despite the terms of the Tennessee Order, which was expressly based upon the factual stipulations submitted by TFC and Vista, Vista filed an Answer in this case that includes a defensive claim of entitlement to an offset, and a counterclaim based on allegations of "collusion" between TFC and the third-party supplier of modular housing units intended for use in the development of the Jackson property.[1] A copy of the Answer filed by Vista and Mr. Brantley is attached as Exhibit B. The defenses and counterclaim are both precluded by the Agreed Possessory Order that resolved the Tennessee litigation. Asserting those claims in this Court, after stipulating to their non-existence in the Tennessee action, arguably violates each of the four subsections of Rule 11(b), addressed below in turn.

[1] Although a third-party complaint was filed against the supplier, no return of service has been filed indicating that the third-party complaint has been served.

Subsection (b)(1) of Rule 11 addresses pleadings "presented for any improper purpose, such as to . . . cause unnecessary delay, . . ." It is difficult to draw any inference from Vista's Answer other than that it was filed in order to cause such delay. In Tennessee, it was Vista's admission in the Order that it had no defenses or counterclaims that in part induced the Tennessee Court to approve and enter the Agreed Order, by which Vista gained a sixty-day delay in TFC gaining possession of the Jackson real estate. But because those same admissions would have the opposite effect on the action in this Court – by simplifying and so expediting TFC's obtaining a money judgment against Vista and the guarantors – Vista in its Answer blithely denied what it had admitted just days before. Not only did it deny that it owed TFC the money that the Tennessee Order established it did owe, but Vista asserted a counterclaim that the Order expressly established did not exist.

Subsection (b)(2) of Rule 11 addresses defenses or claims based upon unjustified or frivolous legal contentions. Contentions foreclosed by other litigation between the same parties fit that bill. Simply put, "[a] legal contention that is made in spite of the obvious preclusive effect of a judgment in prior litigation is not warranted by existing law." 2 MOORE'S FEDERAL PRACTICE § 11.11[7][a] at 11-29 (3d ed. 2008). The Agreed Possessory Order entered in the Tennessee action conclusively resolved the issues raised by Vista's Answer and counterclaim. TFC's entitlement to the remedy of possession in the Tennessee action depended – just as much as would a money judgment – upon the Court's "finding" that Vista was in default, owed the amount stated, and was without defenses or counterclaims that might otherwise bar the remedy sought. [2]

Subsections (b)(3) and (4) of Rule 11 address baseless or frivolous factual contentions. Given Vista's affirmative statement in the Agreed Possessory Order acknowledging (1) the precise amount it owed to TFC, and (2) that it had no defenses or counterclaims that would negate or reduce its obligation, and given the reliance upon and adoption of those statements as "findings" by the Tennessee Court, it is difficult to view the denials contained in its Answer in

[2] A mortgagor that holds over after defaulting on the mortgage is deemed a tenant at sufferance under Tenn. Code Ann. § 29-18-104 and removable from the subject property through an unlawful detainer action. *E.g., Metropolitan Life Ins. Co. v. Moore*, 72 S.W.2d 1050, 1051 (Tenn. 1934). Although in *Moore* the default was not questioned, 72 S.W.2d at 1050, the Court's opinion makes clear, by necessary implication, that if default is controverted a plaintiff must prove it to sustain an unlawful detainer action against a mortgagor under this statute.

this case, or the affirmative factual contentions underlying its purported counterclaim, as anything other than frivolous.

The current version of Rule 11 includes a "safe harbor" provision, requiring the proponent to wait twenty-one days after serving a motion for sanctions before filing it with the Court. The provision encourages the informal resolution of disputes prior to involving the Court by giving the opposing party an opportunity to withdraw or modify the challenged pleading. The Advisory Committee Notes stress the same policy by observing that "[i]n most cases . . . counsel should be expected to give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation before proceeding to prepare and serve a Rule 11 motion." Fed. R. Civ. P. 11 (Advisory Committee Notes to 1993 amendments to subsections (b) and (c)). TFC's counsel called Vista's Rhode Island counsel upon receipt of the Answer in this case. When it became clear that Vista's Rhode Island counsel had not seen the Tennessee Order, TFC's counsel provided a copy. After an exchange of letters concerning the effect of that Order on the Rhode Island litigation, Vista declined to withdraw or modify the Answer as filed.

It is not clear why counsel was unaware at the time the Answer was filed that his client had agreed to an Order the terms of which precluded the defenses and counterclaim contained in the Answer. Absent some other explanation, the inference that Vista's Rhode Island counsel was purposely kept in the dark by his client about the substance of the Agreed Possessory Order seems more likely than the alternative explanation – that Vista's Tennessee counsel did not consider Vista's admissions memorialized in the Tennessee Order to have any significance in the action pending in this Court. While resolution of that issue may affect whether it is counsel or the party upon whom the sanctions should be imposed, either inference would support an Order imposing sanctions. "To support a finding of frivolousness, some degree of fault is required, but the fault need not be a wicked or subjectively reckless state of mind; rather, an individual "must, at the very least, be culpably careless to commit a violation." *Roger Edwards, LLC v. Fiddes & Son, Ltd*, 437 F.3d 140, 142 (1st Cir. 2006), *quoting Young v. City of Providence*, 404 F.3d 33, 39 (1st Cir. 2005).

Vista was a proponent of the Agreed Possessory Order. The basis for and terms of the Order were clearly expressed, and the approval and entry of the Order by the Tennessee Court resolved the Tennessee action. Vista did not appeal from the Order.[3] In that light, Vista's responses to TFC's request that the Answer filed in this case be withdrawn – that the language of the Order acknowledging the debt and the lack of defenses or counterclaims were meaningless recitals, or that it was not contemplated that the Tennessee Order would affect the already pending Rhode Island litigation – are unconvincing, and should be unavailing. *See, e.g., Baella-Silva v. Hulsey*, 454 F.3d 5, 11-12 (1st Cir. 2006)(observing, *inter alia*, that it is "not excusable neglect for an attorney to choose to read an unambiguous judicial decree 'through rose-colored glasses' . . . ," *quoting Mirpuri* v. *ACT Mfg., Inc.*, 212 F.3d 624, 631 (1st Cir. 2000).

For the reasons stated above, TFC requests that the Court grant the Motion and impose on Vista or its counsel an appropriate sanction.

Respectfully submitted,

Textron Financial Corporation
By its Attorneys,

John P. Gyorgy 3560
NOEL & GYORGY LLP
50 South Main Street
Providence RI 02903
(401) 272-7400
(401) 621-5688 (Fax)
JPGyorgy@LawNoel.com

June 20, 2008

[3] Tenn. Code Ann. § 27-5-108 provides that an appeal from a decision of the General Sessions Court must be taken within ten days. The Agreed Possessory Order was entered on March 10, 2008.

## Certification

I certify that on June 20, 2008, a copy of the foregoing document was sent by first class mail to:

Casby Harrison, Esq.
Harrison Law Associates
807 Broad Street, Suite 100
Providence, RI 02903

**IN THE GENERAL SESSIONS COURT FOR THE STATE OF TENNESSEE**
**TWENTY-SIXTH JUDICIAL DISTRICT, MADISON COUNTY**
**AT JACKSON**

| | | |
|---|---|---|
| **TEXTRON FINANCIAL CORPORATION,** | ) | |
| **Plaintiff,** | ) | **Docket Nos.: 08CV-381, -382, -383** |
| v. | ) | |
| **VISTA INTERNATIONAL DEVELOPMENT,** | ) | |
| **Defendant.** | ) | |

**AGREED POSSESSORY ORDER**

Plaintiff Textron Financial Corporation ("Textron") has filed in this Court three detainer actions, bearing docket numbers 08CV-381, 08CV-382, and 08CV-383, respectively, seeking possession of three tracts of improved real property, more completely described therein ("Properties") pursuant to the terms of certain deeds of trust, copies of which are Exhibits to each Detainer Action (the "Deeds of Trust"). VISTA International Development ("VISTA") has denied the validity of the three actions respectively, but the parties have now agreed to resolve the three actions and enter into this Agreed Order.

**Stipulation and Finding**

VISTA is in default under the Deeds of Trust and the promissory notes referenced therein, which have a past due balance, exclusive of attorney fees and expenses, of $1,473,567.27 as of March 10, 2008 (the "Past Due Balance," with it and all other amounts due and coming due referred to as the "Indebtedness"). The Past Due Balance is comprised of $1,417,448.79 in principal owed, $49,474.70 in interest owed, $5,338.83 in late fees owed, and $1,304.95 in other fees owed, none of which are subject to offset, reduction, defense or counterclaim. This Court finds that the compromise memorialized herein is well-taken and accepts the same.

**IT IS THEREFORE AGREED and is NOW ORDERED THAT:**

1. Textron is entitled to possession of the Properties, subject to the terms of this Agreed Order;

2. VISTA shall endeavor to refinance the Indebtedness by no later than ten o'clock a.m. on Monday, May 12, 2008 (the "Refinance Period");

3. If VISTA refinances the Indebtedness and by so doing pays Textron in full before the Refinance Period's expiration, then Textron then shall have no possessory rights hereunder or under the Deeds of Trust;

4. If VISTA fails to pay the Indebtedness in full before the Refinance Period's expiration, then Textron shall be entitled to a Writ of Possession on the Properties, which shall issue on Textron's request;

5. Except as provided herein, Textron's rights and remedies are reserved, including its right to obtain judgment on the Indebtedness and/or initiate foreclosure on the Properties. Textron shall not, however, hold any foreclosure sale of any of the Properties prior to the Refinance Period's expiration (or such earlier date that Textron may obtain possession pursuant to Paragraph 7 of this Agreed Order);

6. VISTA, during the Refinance Period, shall maintain the Properties in all respects and insure each property as required in the Deeds of Trust. VISTA shall not encumber, transfer or lease any one of the Properties, except that VISTA may continue, in accordance with applicable laws, a leasehold it has currently established at 127 Regency Drive, Jackson, Tennessee, which leasehold remains subject to and subordinate to the Deeds of Trust. Nothing in this Agreed Order shall be construed as Textron consenting to such existing leasehold or granting any rights or otherwise in favor of any lessee or other parties with respect to such existing leasehold;

7. Should VISTA fail to maintain the Properties or to insure them as stipulated and required in the Deeds of Trust or otherwise comply with the terms of this Agreed Order, then Textron shall be entitled to an immediate Writ of Possession, which shall issue on Textron's request.

8. Because this Order is entered by agreement, it is not subject to appeal or stay, and the parties knowingly waive and relinquish any right to appeal from or seek any stay of this Agreed Order.

Christy R. Little

GENERAL SESSIONS COURT JUDGE

Dated: 3.10.08

APPROVED FOR ENTRY:

Robert C. Goodrich Jr.

F. David T. Arens (BPR No. 25241)
Robert C. Goodrich Jr. (BPR No. 10454)
Stites & Harbison PLLC
401 Commerce Street, Suite 800
Nashville, TN 37219
(615) 244-5200; Facsimile: (615) 742-0717
david.arens@stites.com

*Attorneys for Textron Financial Corporation*

Nathan B. Pride by RCG

Nathan B. Pride (BPR No. 9615)
423 North Highland Avenue
Jackson, TN 38301
(731) 424-4095
nbplawoffice@yahoo.com

*Attorney for Vista International Development*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**TEXTRON FINANCIAL CORPORATION**

v.

**C.A. No.: 08 – 020ML**

**VISTA INTERNANTIONAL DEVELOPMENT, A CALIFORNIA GENERAL PARTNERSHIP, THE JACKSON FOUR, A CALIFORNIA GENERAL PARTNERSHIP, PRINCE BARDO BRANTLEY; SANDRA BRANTLEY, FRANK RAMOGIDA; AND EDWARD POWELL**

**ANSWER OF VISTA INTERNATIONAL DEVELOPMENT AND PRINCE BARDO BRANTLEYTO PLAINTIFF'S COMPLAINT**

Defendants, Vista International Development ("Vista") and Prince Bardo Brantley ("P. Brantley") hereby answer Plaintiff's Complaint as follows:

1. Admitted

2. Admitted.

3. Admitted.

4. The allegations of paragraph 4 are not directed to the Defendants, Vista or P. Brantley. Accordingly, Vista and P. Brantley do not interpose an answer to paragraph 4 of Plaintiff's Complaint.

5. P. Brantley admits that he was a partner of Jackson 4.

6. The allegations of paragraph 6 are admitted by Defendant P. Brantley.

7. The allegations of paragraph 7 are not directed to the Defendants, Vista or P. Brantley. Accordingly, Vista and P. Brantley do not interpose an answer to paragraph 7 of Plaintiff's Complaint.

8. The allegations of paragraph 8 are not directly to the Defendants, Vista or P. Brantley. Accordingly, Vista and P. Brantley do not interpose an answer to paragraph 8 of Plaintiff's Complaint.

Exhibit B

9. The allegations of paragraph 9 are not directed to the Defendants, Vista or P. Brantley. Accordingly, Vista and P. Brantley do not interpose an answer paragraph 9 of Plaintiff's Complaint.

10. Defendants Vista and P. Brantley admit there is diversity of citizenship between the parties and that the amount in controversy exceeds $75,000.

11. The allegations of paragraph 11 are admitted by Defendant Vista.

12. Admitted.

13. Admitted.

14. Admitted.

15. The allegations of paragraph 15 are admitted by Defendants Vista and P. Brantley.

16. Admitted.

17. Admitted.

18. Admitted.

19. Admitted.

20. Admitted.

21. Admitted.

22. Admitted.

23. Admitted.

24. Admitted.

25. Admitted

26. Admitted.

27. The allegations of paragraph 27 are not directed to Defendants Vista or P. Brantley. Accordingly, Defendants Vista and P. Brantley do not interpose an answer to paragraph 27 of Plaintiff's Complaint.

28. Admitted.

29. Admitted.

30. Admitted.

31. The allegations of paragraph 31, 32, 33, 34, 35, 36 and 37 are not directed to Defendants Vista and P. Brantley. Accordingly, Defendants Vista and P. Brantley do not interpose an answer to paragraphs 31, 32, 33, 34, 35, 36 and 37 of Plaintiff's Complaint.

Denied.

## AFFIRMATIVE DEFENSES

1. Plaintiff's Complaint fails to join several indispensable parties, namely, All American Homes, LLC and Coachmen Industries.

2. Plaintiff's claims are barred by Plaintiff's lack of good faith and fair dealing in the circumstances of this case.

Defendants, Vista International Development
And Prince Bardo Brantley
By their Attorney,

Casby Harrison, III, R.I. Bar No. 3054
HARRISON LAW ASSOCIATES
807 Broad Street, Suite 100
Providence, RI 02907
Tel: (401) 467-20
Fax: (401) 467-2001
casby@casbyharrison.com

## COUNTERCLAIM OF VISTA INTERNATIONAL DEVELOPMENT AND PRINCE BARDO BRANTLEY

1. Defendants had plans to build 18 residential single family town homes in Jackson, Tennessee using prefabricated modular panels built by All American Homes, LLC. ("All American")

Exhibit B

2. Defendants obtained their construction loan financing from Textron to pay for the modular boxes built by All American.

3. Defendants borrowed from Textron solely because All American strongly suggested that Defendants use Textron for their construction financing and because All American gave Defendants financing incentives to use Textron.

4. All American prepared plans and specifications for the modular panels it would deliver to Defendants, and said plans and specifications were stamped and approved by State and local building officials in Jackson, Tennessee, as well as by All American's own engineer, T. R. Arnold & Associates.

5. The plans and specifications required two separate 1 hour rated fire walls with an air space between them dividing the units.

6. Defendants built the foundations for the housing units in question.

7. All American delivered the modular units and set them down on the foundations using cranes. There were five boxes per building.

8. All American Homes proceeded to connect the modular units to the foundations. Defendants performed the finish work to complete the homes.

9. Before all the homes could be completed, local building officials determined that All American had not built the modular units in accordance with the specifications approved by the State engineer and City of Jackson building officials, which specifications had also been stamped and approved by All American's own engineer.

10. The units constructed by All American did not have the two 1 hour walls with an air space between them dividing the units. Consequently the housing units did not meet the fire code for single family occupancy.

11. The failure to comply with the fire code for single family occupancy was a direct result of the negligence and breach of contract of All American.

12. The cost to cure the non compliance with the fire code to allow for single family occupancy was prohibitive and not economically justified, because it would require tearing down the walls that did not meet the fire code and replacing them with walls that did meet the fire code. Additionally, stairs, doors, fireplaces, and interior walls would also have to be demolished and rebuilt.

13. The failure to meet the fire code for single family occupancy presented the Defendants with the risk of not being able to sell the housing units in a timely manner to be able to repay the construction loan to Textron.

14. Defendants brought the non compliance with the fire code problem to the attention of All American and Textron at the same time, and Defendants told them that what All American had built could not be used for its intended purpose, namely, single family housing.

15. Defendants proposed to apply to have the units rezoned from single family to four plex apartment units. Defendants would rent the units, and upon developing an income stream, refinance the project and repay Textron.

16. The moment the project became rezoned from single family units to apartment units the Defendants' profits from the project would be reduced by approximately $400,000, because apartment units have less value than single family units.

17. Textron forbade Defendants from attempting to rezone the project, thereby causing an untenable standstill in which Defendants could not achieve occupancy of the units for single family occupancy or otherwise.

18. Textron's position of threatening to file suit, to foreclose and to repossess the property rather than permit Defendants to rezone and refinance to repay Textron constituted bad faith on the part of Textron.

19. Every conference call Defendants ever had with Textron to attempt to resolve the problem of All American's fire code non compliance has involved both Textron and All American on the telephone with Defendants at the same time. There is absolute linkage between Textron and All American.

20. Textron and All American have had a longstanding mutually beneficial business relationship they wanted to protect and preserve to the detriment of Defendants.

21. Similarly, Textron has had a long standing and extremely financially lucrative business relationship with All American's parent company, Coachmen Industries Textron and Coachmen wanted to protect and preserve their relationship with each other to the detriment of Defendants.

22. High ranking officers of Coachmen Industries also participated in the telephone conference calls wherein Defendants attempted to propose workable solutions to the fact that the housing units in question cannot be sold as single family units due to no fault of the Defendants.

23. Textron's counter intuitive position of blocking any opportunity for Defendants to market the housing units in question arises out of a collusive agreement between Textron, All American and Coachmen Industries for Textron to wrongfully acquire Defendant's property, by using lawful means to accomplish an unlawful purpose.

Exhibit B

24. Textron is further motivated to financially maim Defendants so that Defendants may not have the financial wherewithal to prosecute their Third Party Complaint against All American and Coachmen Industries.

25. Defendants state that if they are found liable to the Plaintiff, the liability will have been brought about by the negligence of All American and Coachmen Industries and the collusive relationship they both have with Plaintiff. Accordingly, Defendants are entitled to indemnity and or contribution from All American and Coachmen Industries, as well as a setoff against the claims of Plaintiff.

Wherefore, Defendants Vista International Development and Prince Bardo Brantley demand indemnity and or contribution from Third Party Defendants All American Homes, LLC., and Coachmen Industries, for all sums that may be rendered in favor of Plaintiff against Defendants, along with a setoff against Textron Financial Corporation in an amount to be determined at the trial of this matter.

Defendants demand trial by jury.

Counterclaim Plaintiffs, Vista International
Development and Prince Bardo Brantley,
By their attorney,

Casby Harrison, III Bar No. 3054
Harrison Law Associates
807 Broad Street
Providence, RI 02907
401-467-2000 office
401-467-2001 fax
casby@casbyharrison.com

I hereby certify that I sent a copy of Defendants' Answer and Counterclaim by regular mail to Plaintiff's counsel, John P. Gyorgy, Noel & Gyorgy, LLP., 50 South Main Street, Providence, RI 02903 on Wednesday March 12, 2008.

Casby Harrison, III

Exhibit B